The next matter on our calendar is Kenneth Manning v. William Barr. Morning Council. You may proceed. Thank you, Your Honor. Ted Polovinsky from Davis Polk on behalf of Petitioner Kenneth Manning. The Board of Immigration Appeals here erred as a matter of law when it held that Mr. Manning was not eligible for relief under the Convention Against Torture. The unrebutted evidence before both the BIA and the Immigration Court established that it's more likely than not that Mr. Manning will be killed if he's returned to Jamaica. The BIA's conclusion to the contrary was erroneous both as a matter of law and because it was inconsistent with substantial evidence. I'll return to the merits in a moment, but first I'm going to address the jurisdictional question that was posed by the motion panel. In answer, in response to the motion panel's question, this Court does have jurisdiction to review Mr. Manning's petition in its entirety. The jurisdiction stripping provisions of Section 1252A2C do not apply to Mr. Manning's petition because Mr. Manning was not ordered removed on the basis of his prior guilty pleas. And several circuits have decided that very question that way, right? That's correct, Your Honor. A number of circuits have decided that question exactly that way. And in addition to that, I think this Court's prior statements on the subject are consistent with the same analysis. Although we haven't decided that particular question. I think that's true, Your Honor. In the Flores case, in the footnote in the Flores case, I think that the Court observed as members of this panel are no doubt aware, that the Fourth Circuit's ruling in Ibarra was, was, was persuasive, but it was not necessary to the Court's conclusion. And again, in this case, Mr. Manning was not ordered removed on the basis of his, of his convictions. I put, I mean, Judge Lohier took a different view in a concurrence in a footnote, I think when was that? 2015. Are you familiar with that one? I think Judge Lohier's view, Your Honor, I think was, was expressed, you're right, in a concurrence in a case that actually, I don't believe addressed the specific question before the Court here, which is whether an alien in this case who was not charged as removable on the basis of his convictions, in which the Immigration Court did not consider his convictions in connection with the decision on removability, and it wasn't part of the final order of removal, that, that was a different case, the case that, that Judge Lohier addressed. Well, yes. And Flores left the question open. Well, he, he basically said he was not convinced by the Ninth Circuit's ruling in Lemus-Galvin as to whether 1252A2C basically required removability to refer to an order of removal being issued, or just that the alien was, in fact, removable because he met the criteria? That is, that is true, Your Honor, but again, it was, it was, it was inconsistent, I think, with the decisions of the other circuits, and in addition to that, it was also inconsistent with, Your Honor, respectfully, I believe, the terms of the statute and also the principles of statutory construction that had informed the other circuits that have considered this question. Why the terms of the statute? So the statute talks about the alien being removable. True. That is right. It says a final… I'm not removable until a final order has been issued. So if I'm an alien and I'm just minding my own business and I have legal status, I'm a legal resident alien, I'm not removable, right? That is true. You are not removable. So if I then commit a serious felony and get convicted, am I removable? I think you're subject to being found removable, Your Honor, and that under the INA, and I think this was the Ninth Circuit's, the Ninth Circuit articulated this, I think, concisely and well in the Alvarez-Santos case. Under the INA, a person's not removable unless or until an immigration judge finds that person removable after a hearing. The Ninth Circuit in Alvarez-Santos specifically said a person's not removable on a particular basis unless or until an immigration judge determines him to be. And so I think that is the importance of the language, Your Honor. But even if there were some ambiguity… That's where there's the split, right? As to whether or not, I mean, as Judge Lowy says, whether that's removable is referring to the order of removal or whether it's referring to the alien? That's right. That is the distinction, Your Honor, and I guess what I'd say is that even if there were some ambiguity on this question, I think all of the canons of statutory interpretation suggest that an alien needs to be found removable in the final order of removable on the basis of his conviction for the jurisdiction. That's in the language of the statute, correct? Excuse me, Your Honor? Of the criminal offense, right? That's in the language of the statute. Yes, exactly. No, it's not. Removable by reason of having committed… No, it's not, right? It just says removable. The language of the statute says that no court shall have jurisdiction to review an order of an alien who is removable by reason of, and then it lists the statutes that would be the basis for him being deported or removed. That's correct, Judge Sullivan. That is what the statute says. There are other provisions, however, that say that forms of relief are not available to individuals who have been convicted of an aggravated felony. That's correct, too, Your Honor. That kind of language could have been used here, but wasn't. Absolutely. It could have been used here. The statute didn't say an alien who has committed an aggravated felony. It didn't say an alien who is potentially susceptible to being removable, as the First Circuit suggested and shown would be an alternative version of the language. In part because there are exceptions to those conviction requirements. In other words, you can be convicted of certain felonies and there still would be exceptions as to whether you would be removed or removable, right? That is true, Your Honor. But I think, and that maybe goes to one of the numerous reasons, in addition to the reasons on the face of the statute, why that's the appropriate reading of the statute. One of them is the presumption in favor of judicial review of administrative actions. But another, which goes to that point, Your Honor, is that there would be serious due contrary ruling in the sense that it would prevent an alien from being able to challenge his or her removability or the basis of his or her removability before the fact-finding court. I don't want to swallow all your time on the jurisdictional point, though it's fundamental. But let's talk then about the findings of the immigration judge concerning torture. You're saying that your client proved, demonstrated that he's more likely than not to be tortured, right? I'm making two points, Your Honor. One of which is that substantial evidence does not support the immigration judge's determination on this. And that's a factual determination. But in addition to that and separately from that, as we articulated in our brief, the immigration judge here erred as a matter of law by not properly considering all of the Among other things, the immigration judge didn't seriously consider the affidavit of Professor Harriot, who concluded specifically that Mr. Manning's life would be at risk if he returned to Jamaica. The court did reference Professor Harriot's affidavit, but only in the context of government acquiescence, not in the context of whether Mr. Manning had satisfied his burden on likelihood of torture. And that is one of the errors, one of the many similarities between this case and the circuit's prior precedence on the appropriate review by immigration courts and by the Board of Immigration. He testified against a gang leader in a notorious case in Jamaica, right? Everyone knew about it. That's correct, Your Honor. It was well reported in our press as well. That's correct, Your Honor. Twenty years ago, right? It was twenty years ago. In fact, it may be even more than twenty years ago at this point. But nevertheless, there is evidence, including Mr. Manning's nephew's affidavit, which again the immigration judge did not consider, in addition to Professor Harriot's affidavit, and also, frankly, the government's own conclusions while Mr. Manning was in custody that his life was at risk. They kept him in secure conditions for twenty-eight years, packing every six months. Exactly right. That suggests that he was at risk from people in prison. That doesn't necessarily mean he was at risk from anybody in Jamaica. You're right that it does suggest that he was at risk in prison in the U.S. in U.S. protective custody. But Your Honor, the risk that he faces in the U.S., and this I think is evident in the record from the comments that he received from other Jamaicans in ICE custody, the risk that he would face would be risk at the hands of other Jamaican gang members. It's the same risk that he would face were he returned to Jamaica. And more fundamentally, again, Your Honors, the immigration court did not consider the import of that decision when she reached her conclusion here. And that is a legal error that requires the court to vacate or remand, however the court comes out on the jurisdictional question. I think it's undisputed, as the court's aware, that 1252A2D does permit the court to consider errors of law. You also think it was error for the immigration judge to conclude that he could go back to Jamaica and relocate, right, to another part of the island? That's correct, Your Honor. That was error, both legal error and also error because it was not a decision that was supported by substantial evidence. But I mean, but why? I mean, it's a country of three million people. It's twice the size of Delaware. It's, I mean, if it were a state, it would be, I think, thirty-sixth in terms of population. It's a pretty big place. It is a big place, and if I may, I understand my time's up, but I'd like to try to . . . Answer the question. Yeah. If I can point out again that this is an error, both an error of law and a factual error. And it's an error of law because the immigration judge put the burden on Mr. Manning to establish that he was not able to relocate. I think that's inconsistent with the terms of the relevant regulation as the Ninth Circuit held in Maldonado and Bank. It's a legal error in which the court applied the burden improperly. But separate and aside from that, the court also just didn't consider Mr. Manning's unrebutted testimony on this subject appropriately and again didn't consider . . . His unrebutted testimony that he would feel, that he would be afraid if he went back? The unrebutted testimony is that his life would be at risk . . . Wait a minute. That's a conclusion. You think that that fact, because the I.J. found him to be credible, has to be credited? Your Honor, I think if the I.J. found him to be credible, the I.J. needs to explain why she did not credit that aspect of his testimony. That aspect of his testimony is the ultimate issue, right? That's the conclusion as to whether or not he faces torture. I think the conclusion on which he testified is whether his life would be at risk if he were outside of the confines of Jamaica, which, Your Honor, it may be in part, it may lead to the ultimate conclusion, but it still is his testimony. It's his belief and his understanding based on what he's heard and what he knows. So that is entitled . . . so his belief is entitled to be credited as a fact? Again, I think, Your Honor, the issue is that the immigration court needs to explain why she didn't credit it, and again, I don't think she appropriately or sufficiently did it here. She found him credible on other issues, did she? She did. She expressly found him to be credible, his testimony to be credible, without any exception. Well, if it's credible, it does become almost factual. I think it is factual, and again, I think part of this . . . there are two levels at which this question operates. One is whether the immigration judge was factually right or wrong in her conclusion, but the other is whether she, as a matter of process, explained her work, which is what this Court's precedents require. All right. You've reserved three minutes for rebuttal. We'll hear from the government. Thank you, Counsel. Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the Attorney General. In this case, the Board of Immigration Appeals upheld the immigration judge's fact-driven denial of protection under the Convention Against Torture. However, this Court analyzes this case, Petitioner cannot prevail. I'd like to make sure to cover both the jurisdiction and the merits in the time I have, Your Honor. First, taking up some jurisdictional points, Your Honor, there is a division of authority on the question of jurisdiction here. I think the best view, the view most consistent with Section 1252A2C's text, critically, an alien who is removable by reason of a covered offense text, is the one, the most reasonable one, is the one adopted by the Fifth Circuit and the Eleventh Circuit. The circuits all recognize that both sides have something here on this argument, Your Honor, but as the Fifth Circuit recognized, quote, so long as an alien is, in fact, is one of these offenses, taking up the quote again, this Court has no jurisdiction irrespective of whether the INS originally sought removal for that reason. Again, the Congress could have used different words had it wanted this to be removability adjudged, you know, just somebody who has been ordered removed by this reason. That's not the language it used. I think the best reading of that text is the one adopted by those two circuits. And I think here, Your Honor, we have the situation where it's not like we're asking this Court to How do you respond to the process argument? In other words, if you don't require the IJ to make that determination, and the issue is only raised when it comes up to us, how do you respond to the argument that the alien hasn't had a chance to really address that, to challenge that determination? I'd say that to the extent that that may be present in some cases, it's not going to be present in other cases, Your Honor, and I think this one is a reasonable example. It's one thing, for example, you can see different things on a spectrum. One would be Right, but we can't decide that in some cases we'll have jurisdiction, in other cases we won't, depending on the particular nuance of the argument. I think what I'm saying, Your Honor, is the Court will be able to assess one way or another, you know, is somebody removable on this basis. If it's just, we have some bad facts in the record, but we don't have a conviction, and we don't know what that conviction would mean, the Court may not know, okay, that he is removable for a covered basis. Here, however, we have a situation where this petitioner pleaded guilty to second degree murder in 1987. He was sentenced to 20 years to life. He served 28 years. He described the murder, this is at page AR530, as one where somebody, a young man from a club, shot Delroy Edwards' foot in a club, and Delroy ordered me to shoot him in the parking lot outside. I don't think it's contested in this case that this terrible offense qualifies as an aggravated felony. So I don't think this gets to maybe some harder questions about where the Court would potentially have to dig deeper as to whether somebody's removable. So that's, I think, my best response on that, Your Honor. Those are, I think, the key points I wanted to make sure to hit on jurisdiction, Your Honor. I want to make sure I also hit a few fact points, because the colloquy with my friend went deeply into some of those. I think the disputes that are really kind of being raised here on these factual points are the nephew affidavit, the Harriet expert declaration, the protective custody issue, the burden on relocation, and how do we treat a finding of credibility as to future events. And I want to make sure to hit all of those, Your Honor. As to both, I'd first point out, Your Honor, that there was a lot of evidence in this case, and the I.J. in this case heard a good amount of testimony and was attentive. At page AR62, the I.J. flatly says, in considering my decision, I have considered the testimony of the respondent in Exhibits I through V. Exhibits I through V include some of the key testimony that the petitioner is emphasizing here, the nephew's affidavit, the Harriet declaration. Those are in Exhibits IV as, I believe, Tabs C and Tabs D. We also see that the immigration judge addressed the Harriet declaration in the decision in this case. And the point I'd emphasize, Your Honor, is that these pieces of evidence, cumulatively and just looking at each of them, they don't compel a different conclusion than the one the immigration judge reached. The nephew testified, and his declaration appears at 543 to 545 of the administrative record. He says at paragraph 7 on page AR543, my last trip to Jamaica was 11 or 12 years ago. That was 2005, 2006, by my count, Your Honor. He then goes on to conclude, however, that, look, if you send the petitioner back, he's going to die within a month, it may be two weeks. These are just conclusory assertions. There's not a clear basis for it. There are in this record a lot of sweeping statements that purport to predict or decree, so to speak, what is going to happen in the future. And they just don't bear the weight that my friend places on them. I think a similar point here can be made with the expert declaration, the Harriet declaration, Your Honor. Again, this is a five-page declaration. It appears at pages 536 to 540 of the record. Only the last three of those pages really get into the analysis of the issues here. And when it comes to petitioner's actual situations, the conclusions are quite modest and the analysis is quite terse. I mean, the key language, I think, on the conclusion, this is at page 538, the immigration judge says, or my apologies, Professor Harriet says that he believes that were Mr. Manning to be removed to Jamaica, his life would be put at risk. We don't know the quantity of that risk. Later in the declaration, he again just says his life would be put at risk. The immigration judge needs to look at all of these facts and say, okay, look, as the immigration judge reasons through it, I'm looking at all the facts. He left Jamaica 30 years ago. He testified over two decades ago. I'm not seeing a situation where he can't relocate. He says he won't, as the immigration judge said on, I believe it's page 66, he says he's not going to go back to his old neighborhood so he doesn't run into the same people. The immigration judge also pointed out, look, this is a gang that its numbers are diminished. The petitioner isn't even sure if it still exists as a gang. It's not clear that other gangs are going to go after him. The ranker's posse was confined to this local neighborhood area. The Bureau of Prisons keep him in protective custody for 28 years if he was not in danger. Your Honor, it was a different kind of danger. It wasn't danger with respect to Jamaica. That danger was, he was put in the kind of custody that by petitioner's own testimony, and this is page 154 to 160 of his testimony, he says, look, this branch of the prison, this subpopulation of the prison was for those who testified against a gang member organized crime or something. He points out John Gotti as an example. So on a couple of pages later, I believe, the IJ addressed this, the IJ understood it, and the IJ, I think, correctly understood that this didn't really go to his problem in Jamaica and what he would face due to his past associations with this gang. On what basis do you say that? On what basis do I say that, Your Honor? That had nothing to do with his problems in Jamaica. Is that in the record? Are you pointing to anything in the record? John Gotti is not Jamaican, is he? Not to my understanding, Your Honor. Here's, if I can be responsive to your question, Your Honor. I should hope so. I'm doing my best. My, the testimony on the protective custody bit is at 154 to 160, and it just doesn't go farther than to say, look. Well, but you just said it had nothing to do with Jamaica, and I was wondering if you had any evidence in the record that you could point us to that would allow us to conclude, as you do, that he was in protective custody because it had nothing to do with Jamaica. Maybe I can reframe a little bit better because I think you... Thank you. Thank you. Thank you, Your Honor. Is it, there's nothing in the, I have not seen anything in the record that does establish that it has something to do in Jamaica, and I would say that the IJ was in the best position to find the facts here and the, and the record... Instructions can come from Jamaica to the prison system, right? I, I wouldn't, I wouldn't contest that, Your Honor. I, I guess I would say that, look, the record doesn't compel a conclusion that this, this created a problem from Jamaica, but I do, I do take your point and, and understand that, Your Honor. I would just say that the protective custody here thing, at least so far as I read the record, is... They checked, they, they revisited it every six months for 28 years when he was in protective custody. And every six months they made a decision that he needed it. Again, Your Honor, but I think it's just as reasonable an explanation for that is that snitches in prison generally face big problems because they're, they're snitches and they're just not liked. I mean, that's, that's, I think, a very fair reading of the testimony. Is that a phrase that you use, snitches? I thought that was a phrase that only prisoners use. Your Honor, the... Do we as a government talk about snitches? The, the, the petitioner here repeatedly used the word snitches. The expert report here talked about, as I recall... Before, before you run out of time... Yes, Your Honor. ...could you address the Burden question? It does appear that the immigration judge determined that, that, or said that established that he could not relocate. And that does suggest that the IJ was putting the burden on the petitioner to, you know, to prove, uh, uh, the inability to relocate. Isn't that, if that's so, would that not be an error of law? I don't think so, Your Honor. I mean, I think the courts have not necessarily agreed on this. Even the Ninth Circuit in ruling against us did have a line in its opinion. I believe it's either 1164 or 1165 when it acknowledges that... Page numbers. Um, the Ninth Circuit says that the statute does not place a burden on an applicant to demonstrate that relocation, uh, is impossible. And it... So did the IJ here do that? Place the burden on the, on the applicant? No, Your Honor. I, in a two-tiered response on that. First, I think if the, if the IJ had decided this solely on relocation, he, uh, the IJ wouldn't have gone in, needed to go into these other issues. And just a couple of pages down from the statement that, that my friend highlights, Your Honor, uh, the, the court said, look, and this is, I think, a holistic kind of reasonableness conclusion, um, you know, although we understand, we, you know, the IJ understands that his extensive, his extended family, um, let me hit the critical language, respondent has not had any contact with his family for at least seven or eight years that are there, and there is no reason why he could not go back to Jamaica and relocate to another part of the country without contacting his family or placing anyone on notice. I think that's a reasonableness determination, Your Honor. And again, it's analyzed in the context of other features, the passage of time, uh, just the status of the Ranker's gang that many are in prison or just no longer around as even petitioner's evidence reflects. And I think that all goes to show that this was not an error of law, Your Honor. These were reasonable factual conclusions and that this court should either dismiss the petition for review for lack of jurisdiction or deny it on the merits. Thank you, counsel. Thank you, Your Honor. Counselor, you were appointed and did this brief pro bono? Yes, I did, Your Honor. I want to thank you on behalf of the court. Uh, it was, it was my pleasure and a lot of credit's due to Mr. Magee, who's sitting with me here at council table. Um, if I can address quickly in my remaining time, uh, just a couple of quick points. One thing I want to really emphasize here is that there are two, uh, there are two reasons, uh, fundamental reasons here why the court should vacate and, and, and remand the BIA's order. The first is that it was not supported by substantial evidence. But the second, uh, is that there were errors of law in the way in which the immigration judge considered the record here. Um, it's not enough to say in a blanket sort of way, uh, the way my friend here suggested that I've considered all of the evidence and then reached a decision that doesn't specifically acknowledge and address important pieces of evidence that would, that would require a different conclusion. And one of those key pieces of evidence is, um, uh, as you, as your honor noted, um, that the government did determine every six months that Mr. Manning's life was in danger. And I would respectfully submit that the danger is the same danger. And I think you say that it's the same danger because prison could get shanked or sliced by anybody who just doesn't like snitches as nothing to do with who he testified against. I think, I think on the, on the snitch or informant point, I agree that a reason why he was in protective custody was that he was an informant against Delroy Edwards, but Professor Harriot, Professor Harriot's report specifically says that that same fact is why his life would be in danger if he were to return to Jamaica, that there is within Jamaican posse's a code that enforced, that requires silence among posse members and that punishes posse members with death if they violate that code of silence. The difference is in prison, people presumably know who you are, where if you're relocated to a country that you haven't been in in 30 years, you might be able to be absorbed anonymously, right? Uh, I think Your Honor, here, the, the, the testimony in the record here suggests that he could not be absorbed anonymously, absorbed anonymously. And again, I don't think the court properly and sufficiently considered the question of whether he could, in part because I think she put the burden on him to establish that he could relocate outside of Jamaica. But beyond that, again, I don't think that she properly considered, uh, all of the evidence in the record here, uh, uh, and, and explained why things like Professor Harriot's, uh, affidavit, the nephew's affidavit, other things don't require a different conclusion. And those are the exact same errors that another panel of this court relied on in Hamilton, looking to well-established circuit precedent in which it vacated and remanded a very, very similar BIA order, um, against, uh, another Jamaican, uh, who was in a very similar situation. Unless your honors have any further questions. Um. You're both very good argument. Thank you. Um.